Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATTILIO CIARLA,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, INTERNATIONAL UNION; UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL 315; ABC CORPORATIONS (FICTITIOUS CORPORATIONS 1-10); JANE DOES (FICTITIOUS PERSONS 1-10); JOHN DOES (FICTITIOUS PERSONS 1-10),<br><br>*Defendants.* | Civil Action No. 18-15787<br>(JMV)(SCM)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiff Attilio Ciarla sues United Government Security Officers of America, International Union ("International Union") and United Government Security Officers of America, Local 315 ("Local 315") (collectively, "Defendants" or "Union")[1] for breach of the duty of fair representation. Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint. D.E. 8. The Court reviewed the parties' submissions[2] and decided the motion without

---

[1] Plaintiff also names as defendants fictitious entities and persons: ABC Corporations 1-10, Jane Does 1-10, and John Does 1-10.

[2] Defendants' brief in support of their motion to dismiss will be referred to as "Defs.' Br." (D.E. 8); Plaintiff's opposition will be referred to as "Pl.'s Opp." (D.E. 14); and Defendants' reply brief will be referred to as "Defs.' Reply" (D.E. 15).

oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendants' motion to dismiss Plaintiff's Complaint is **GRANTED**.

## I. BACKGROUND[3]

The following facts are taken from Plaintiff's Complaint, D.E. 1 ("Complaint" or "Compl."). In September 2009, Plaintiff became employed as a detention officer for CoreCivic, Inc. ("CoreCivic")[4] at the Elizabeth Detention Center. Compl. ¶ 2. International Union and Local 315, collectively, constituted the Union for employees of CoreCivic. *Id.* ¶ 3. Plaintiff was a member of the Union. *Id.* ¶ 2. In March 2017, the Union entered into a collective bargaining agreement with CoreCivic on behalf of CoreCivic's employees, including Plaintiff. *Id.* ¶ 3; Ex. A.

During his employment from September 2009 to May 2018, Plaintiff received three disciplinary notices, called "Problem Solving Notices" ("PSN"). *Id.* ¶ 7. Plaintiff's first PSN occurred in June 2012, whereby Plaintiff was suspended by CoreCivic for five days after inmates became ill while playing card games during Plaintiff's shift. *Id.* ¶ 8; Ex. B. Thereafter, Plaintiff was involved in a mediation with a female detention officer, O.M. *Id.* ¶ 10. The mediation was conducted at the request of Local 315. *Id.* It was determined that over a course of six months, Plaintiff had provided O.M. with gifts while at work, including "lotion at Christmas, [] cookies and candy from the venting [sic] machine and a dozen roses close to or on Valentine's Day." *Id.*

---

[3] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[4] Plaintiff notes that he was an employee of CoreCivic, Compl. ¶ 2, but also an employee of Corrections Corporation of America ("CCA"). *Id.* ¶ 5. It appears that CCA and CoreCivic are the same company, whereby CCA was rebranded as CoreCivic. Plaintiff seems to use both names interchangeably, so for ease of reference, the Court refers only to CoreCivic.

2

Local 315 and O.M. indicated that these gifts were unwanted, but Plaintiff contends that he "gratuitously and generously in a non-harassing matter, gifted these items" to O.M. *Id.* After the mediation, Plaintiff agreed to cease his gift-giving to O.M., and thereafter they "avoided contact and conversation." *Id.* ¶ 11.

Plaintiff's second PSN occurred in April 2018, after Plaintiff spoke to O.M. concerning an incident where she had knocked on "the dorm window where [Plaintiff] was positioned" and waved to a detainee. *Id.* ¶ 13. Plaintiff explained to O.M. the risks associated with her actions and "instructed her to never do that again." *Id.* ¶ 14. As a result of this encounter, O.M. reported Plaintiff for harassment, supporting her position with written statements by visitors who allegedly witnessed the exchange. *Id.* Consequently, Plaintiff's second PSN was for violation of CoreCivic's Code of Ethics and Business Conduct and Workplace Harassment Policy. *Id.* ¶ 15; Ex. C. Plaintiff received a notice of termination for his second PSN. *Id.*

Plaintiff's third PSN occurred in May 2018 because Plaintiff was sleeping on duty. *Id.* ¶ 16. Plaintiff received a separate, additional notice of termination for his third PSN. *Id.* Thereafter, Plaintiff was informed that he should no longer report to work. *Id.* ¶ 17. Plaintiff then contacted his union representative, Andre Rogers,[5] to inquire about filing a grievance and to request the evidence CoreCivic used in its determination to terminate Plaintiff's employment. *Id.* On June 19, 2018, Local 315 filed its grievance on behalf of Plaintiff contesting his termination. *Id.* ¶ 18; Ex. E. The Union's grievance and request for Plaintiff's reinstatement was denied by CoreCivic on July 5, 2018. Ex. F. On August 13, 2018, the Union notified Plaintiff that it had reviewed the facts and accompanying documents concerning his grievance, and in turn, made the

---

[5] Andre Rogers, who is Plaintiff's union representative and President of Local 315, was not named as a defendant.

3

decision "to not proceed to [a]rbitration with [Plaintiff's] case." Ex. G. The Union informed Plaintiff that the reason for not proceeding to arbitration was threefold: (1) "[t]he discipline taken by [CoreCivic] was for just cause according to company policy"; (2) "[t]he [i]nvestigation satisfied the burden of proof and [Plaintiff's] termination was [for] [j]ust [c]ause"; and (3) Plaintiff's "[v]iolation of Workplace Harassment Policy." *Id.* Plaintiff contends that he "was subjected to an unfair labor practice during his grievance [process] and was not properly represented by [the Union]." Compl. ¶ 22. As a result, Plaintiff claims that the Union breached its duty of fair representation.

Plaintiff filed his Complaint on November 7, 2018, claiming that Defendants breached the duty of fair representation. D.E. 1. On December 20, 2018, the Union moved to dismiss Plaintiff's Complaint, with prejudice. D.E. 8. Plaintiff filed opposition, D.E. 14, to which the Union replied, D.E. 15.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.[6]

---

[6] The Court notes that Plaintiff seems to misunderstand the standard of review for a motion to dismiss under Rule 12(b)(6). For example, Plaintiff's brief in opposition argues that

> Defendants['] Motion to Dismiss is premature, as no discovery has been conducted in this matter. The Defendants['] Motion to Dismiss is akin to a Motion for Summary Judgment, which is improper at this stage of litigation. Defendants have provided no evidence or affidavits or exhibits that defend and back up its stated legal position. Instead, Defendants rely on the documents submitted by Plaintiff in its Complaint[.]

Pl.'s Opp. at 1. In ruling on a motion to dismiss, however, a district court is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III. LAW AND ANALYSIS

"The duty of fair representation is inferred from unions' exclusive authority under the National Labor Relations Act . . . to represent all employees in a bargaining unit." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563 (1990) (citing *Vaca v Sipes*, 386 U.S. 171, 177 (1967)). The duty operates "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 n.14 (1983) (quoting *Vaca*, 386 U.S. at 182) (internal quotation marks omitted). The duty mandates that a union "serve the interests of all

---

[are] based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997). In other words, despite Plaintiff's assertion to the contrary, Defendants are supposed to rely on the documents submitted by Plaintiff in his Complaint when making a motion to dismiss.

5

members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177. The duty applies to the bargaining process between the union and employer, as well as the subsequent enforcement of the collective bargaining agreement. *Chauffeurs, Teamsters & Helpers, Local No. 391*, 494 U.S. at 563. Accordingly, the union is "required to pursue [its members'] grievances in a manner consistent with the principles of fair representation." *Id.*

Importantly, however, the duty of fair representation "does not confer on an employee an absolute right to force [the union] to press [the employee's] complaint all the way to the very end of the grievance procedures made possible by the collective bargaining agreement." *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970). As the Third Circuit explained in *Bazarte*:

> The union has an obligation in exercising its power as bargaining agent to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action. An employee, therefore, is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily, and this is true even if it can later be demonstrated that the employee's claim was meritorious. It is therefore essential to [a] plaintiff's claim that there [be] proof of "arbitrary or bad-faith conduct on the part of the [u]nion in processing [the employee's] grievance." It follows from this that proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation.

*Id.* (quoting *Vaca*, 386 U.S. at 193). Notably, even if the union fails to proceed with a grievance or decides not to arbitrate a meritorious claim, a breach of the "duty of fair representation occurs only when [the] union's conduct toward a member of the collective bargaining agreement is arbitrary, discriminatory or in bad faith." *Walczak v. Interstate Brands*. No. 99-284, 2000 WL 1580109, at *7 (D.N.J Sept. 18, 2000) (quoting *Cole v. Pathmark of Fairlawn*, 672 F. Supp. 796, 804 (D.N.J Oct. 30, 1987)).

6

A union's actions will only be deemed arbitrary if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Bakos v. Am. Airlines, Inc.*, 748 Fed. Appx. 468, 471-472 (3d Cir. 2018) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). Such a "'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (quoting *Air Line Pilots Ass'n Int'l*, 499 U.S. at 67). To show discrimination on part of the union, "a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Bakos*, 748 Fed. Appx. at 472 (quoting *Addington v. U.S. Airline Pilots Ass'n*, 791 F.3d 967, 984 (9th Cir. 2015) (internal quotation marks omitted)). To show bad faith on part of the union, a plaintiff must put forth "a showing of fraudulent, deceitful, or dishonest action." *Id.* (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)).

Here, Plaintiff has failed to plausibly state a claim for breach of the duty of fair representation. Plaintiff appears to claim that the Union breached its duty by failing to proceed with mediation or arbitration, as well as by failing to communicate with Plaintiff throughout his grievance process. Compl. ¶¶ 24-34. As such, the Court must determine whether Plaintiff sufficiently alleges that the Union's conduct toward Plaintiff was arbitrary, discriminatory, or in bad faith. *Bakos*, 748 Fed. Appx. at 471 ("A union breaches its duty of fair representation only when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'") (quoting *Vaca*, 386 U.S. at 190)).

With respect to arbitrariness, Plaintiff has not sufficiently alleged that the Union's conduct was "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n Int'l*,

7

499 U.S. at 67. To the contrary, the Union seems to have filed a grievance on behalf of Plaintiff, requested all relevant documentary evidence from Plaintiff's employer, reviewed the evidence, and thereafter concluded that Plaintiff's termination was for just cause based on the evidence. Compl. Ex. E; Ex. G; Defs' Br. at 15.[7] As a result, the Union decided to forgo arbitration. For these same reasons, Plaintiff has likewise not plausibly pled that the Union's conduct was discriminatory or in bad faith. With respect to discrimination, Plaintiff sets forth only the conclusory allegation that the Union's conduct "was deliberate and unjustified and . . . resulted in the treatment of a unit employee different from other unit employees." *Id.* ¶ 34. Plaintiff, however, fails to sufficiently plead any factual allegations that show "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Bakos*, 748 Fed. Appx. at 472. And with respect to bad faith, Plaintiff has not alleged any conduct by the Union that would demonstrate "a showing of fraudulent, deceitful, or dishonest action." *Id.*

Lastly, Plaintiff claims that the Union breached its duty of fair representation by failing to follow the contractual grievance procedure set forth in the collective bargaining agreement.[8] Compl. ¶ 32. In support of this claim, Plaintiff states that "it is entirely unclear whether or not Article 15 [of the collective bargaining agreement] was followed correctly. This unknown issue

---

[7] In his opposition, Plaintiff includes an affidavit from Plaintiff along with exhibits. *See* Ciarla Affidavit, D.E. 14-1, Ex. A; Ex. B. This information cannot be considered by the Court in deciding a motion to dismiss. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).

[8] Plaintiff refers to the relevant sections as "Article 14, subsections 4(B), 4(D)(1), Section 5 and Article 15." Compl. ¶ 32. With respect to Article 14, however, Plaintiff sets forth no factual allegations to demonstrate how Defendants, in fact, breached Article 14(4)(B), (4)(D)(1), or (5). In fact, Plaintiff's brief in opposition does not even reference Article 14, much less argues that the Union breached it.

alone, which demands discovery, is a basis for denying Defendants['] Motion to Dismiss." Pl.'s Opp. at 11. The Court disagrees.

Plaintiff's Complaint sets forth no factual allegations that show the Union failed to follow the grievance procedure outlined in Article 15 of the collective bargaining agreement – much less that the Union's conduct was arbitrary, discriminatory or in bad faith. Plaintiff essentially admits as much with frank acknowledgement that "it is entirely unclear whether or not" the Union followed the relevant provisions. In fact, Plaintiff's own exhibits appear to show that the Union did follow the grievance procedure. "Step 1" of Article 15, Section 3 required the employer to respond to the grievance within fourteen days of receiving it. Compl. Ex. A at 21. Defendants filed their grievance on behalf of Plaintiff on June 19, 2018. Ex. E. Plaintiff's employer responded and denied the grievance on June 29, 2018. *Id.* Next, "Step 2" required Defendants to escalate the grievance within fourteen days of the employer's denial, which Defendants did so on July 3, 2018. Ex. A at 21; Ex. E. Plaintiff's employer provided its required written response to "Step 2" on July 5, 2018, again denying the grievance. Ex. F. Defendants thereafter requested non-binding mediation on July 10, 2018, to which Plaintiff's employer failed to respond. Ex. A at 21; Ex. E. As a result, Local 315 referred the grievance to International Union for a determination as to whether to proceed with arbitration, which it ultimately declined to do for the reasons explained above. Ex. A at 21; Ex. E; Ex. G.

Accordingly, Plaintiff has not plausibly pled its claim for breach of the duty of fair representation, and therefore, Plaintiff's claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's Complaint. Plaintiff is provided with thirty (30) days to file an amended complaint that cures the

9

deficiencies noted herein. If Plaintiff fails to do so, then the complaint will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: September 20, 2019

                                                 John Michael Vazquez, U.S.D.J.